UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAMON LUCKY MITCHELL,

                Petitioner,

      v.

FRANK LARA,
ACTING WARDEN

                Respondent.

11 Civ. 1540 (LBS)

**MEMORANDUM & ORDER**

SAND, J.

      On March 3, 2011, inmate Damon Lucky Mitchell ("Petitioner" or "Mitchell") filed, *pro se,* a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In the petition, Mitchell challenged the decision by the Federal Bureau of Prisons ("BOP") to deny his request for a *nunc pro tunc,* or retroactive, designation of the state prison in which he was incarcerated from 1999 to 2005 as a site of federal incarceration. Mitchell made three arguments why the BOP's decision to grant him a *nunc pro tunc* designation was incorrect. Pet.'s Mem. at 7–10. On October 25, 2011, we issued a Memorandum and Order in which we rejected two of these arguments and reserved decision on the third, subject to additional briefing by the BOP. *Mitchell v. Lara*, No. 11 Civ. 1540 (LBS), 2011 U.S. Dist. LEXIS 124351 (S.D.N.Y. Oct. 25, 2011) ("the October Order"). On the basis of the additional briefing provided by the BOP, and for the reasons provided below, we now deny Mitchell's habeas petition.

**I.    Discussion[1]**

      In *Barden v. Keohane*, the United State Court of Appeals for the Third Circuit held that

---

[1] For the purpose of this opinion, the Court presumes familiarity with the facts of the case. A detailed history of the underlying facts is provided in *Mitchell,* 2011 U.S. Dist. LEXIS 123451, at *1–4.

1

prisoners, like Mitchell, who arrive in federal custody after having served time in a state jail have a right to request a BOP review of whether the state prison in which they were previously incarcerated should be designated as a place of federal confinement *nunc pro tunc*. *Barden v. Keohane,* 921 F.2d 476, 478 (3rd Cir. 1990). Such a designation, the Third Circuit recognized, would in effect make a prisoner's state and federal prison sentences run concurrently, rather than consecutively. *Id.* at 482–83. In response to *Barden*, the BOP developed internal regulations to govern the reviews that the Third Circuit—and subsequently, also the Second Circuit[2]—required it to perform when prisoners who transferred to federal custody from state custody requested a *nunc pro tunc* designation. The current regulation setting forth the procedures that prison officials must follow and the factors they must take into account when conducting *Barden* reviews is Program Statement 5160.05 ("the Program Statement"). Farrar Decl. Ex. I.

Section 9(b)(4) of the Program Statement sets forth the procedure to be followed when an inmate requests a *nunc pro tunc* review. It states that, after receiving the prisoner's request for a review, the Regional Inmate Systems Administrator ("RISA") who oversees the federal prison in which the inmate is housed should send a letter to the sentencing court and inquire whether the court had any objections to a *nunc pro tunc* designation. Farrar Decl., Ex. I. at 6.[3] In the event that the sentencing judge is no longer available and/or the assigned judge has no opinion, Section 9(b)(4)(e) indicates that the RISA (now the DSCC), in consultation with the BOP Regional Counsel, "will make a determination [about the appropriateness of the *nunc pro tunc* designation] based on the particular merits of the case." *Id.* It refers the reader to Section 8(a) of

---

[2] *McCarthy v. Doe*, 146 F.3d 118, 122-123 (2d Cir. 1998) (We agree with the Third Circuit that [18 U.S.C.] § 3621(b), which grants broad discretion to the Bureau in designating a place of imprisonment, gives the Bureau authority to make the *nunc pro tunc* designation sought by petitioner…. In a case such as this . . . the Bureau should exercise its discretion under § 3621(b) to review petitioner's request for *nunc pro tunc* designation").

[3] As a result of administrative reorganizations at the BOP, at present it is no longer the RISA but instead the BOP's Designation and Sentencing Computation Center ("DSCC") that is responsible for reviewing inmate requests for *nunc pro tunc* designation. Resp't's Supplemental Return & Mem. Opp'n Writ Habeas Corpus at 3.

the Program Statement for more information about what this means. Section 8(a) of the Program Statement in turn lists the factors to be considered when examining the merits of a particular case. It states:

> "Exceptions to the general rules regarding concurrent designation may be based on the merits of a particular case. Information reviewed will include:
> - inmate discipline history,
> - institutional adjustment,
> - recommendations of the wardens at the state and federal institutions,
> - the recommendation of the prosecuting Assistant U.S. Attorney,
> - intent of the federal sentencing court, if available, and
> - any other pertinent information regarding the inmate." *Id.* at 4.

In the October Order, we concluded that the BOP had not followed these regulations when conducting its review of Mitchell's request because, after the original sentencing judge proved unavailable and no other opinion was provided by the sentencing court, the BOP failed to consider any of the factors listed in 8(a). *Mitchell*, 2011 U.S. Dist. LEXIS 124351, at *14. We interpreted the use of the verb "will" in Sections 9(b)(4)(e) and 8(a) to mean that consideration of the factors listed in Section 8(a) was mandatory. *Id.* at *20. On this basis, we concluded that Mitchell's habeas petition—interpreted to "raise the strongest argument that [it] suggest[s]," *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)—made a plausible argument that the BOP had abused its discretion when it reviewed Mitchell's request for a *nunc pro tunc* designation and that, under the abuse of discretion standard set forth in *Barden* and followed in this Circuit,[4] the petition should be granted.

We noted, however, that the question of whether the BOP's failure to follow its own regulations amounted to an abuse of discretion was a question of first impression, and one that the BOP had not had the opportunity to fully brief. *Mitchell,* 2011 U.S. Dist. LEXIS 124351, at

---

[4] *Barden*, 921 F.2d at 478 (noting that after the BOP provides a *nunc pro tunc* review, "[a]ny further review of the Bureau's action will be limited to abuse of discretion"); *McCarthy*, 146 F.3d at 123 (same).

*20. We therefore reserved decision on Mitchell's habeas petition and requested additional briefing by the BOP on two narrow questions: first, whether the BOP, in its view of the regulation, had in fact complied with the procedures specified in Program Statement 5160.05; second, if it had not, whether this amounted to an abuse of discretion. *Id.* at *20–21.

On February 7, 2011, the BOP filed a supplemental memo, addressing both of these questions. Resp't's Supplemental Return & Mem. Opp'n Writ Habeas Corpus ("BOP Memo"). It argued that, because the first sentence in Section 8(a) of the Program Statement states that "[e]xceptions to the general rules regarding concurrent designation *may* be based on the merits of a particular case," consideration of the factors listed in that section by the administrator in charge of conducting the review is optional and not mandatory, as we concluded in the October Order. The failure of the administrator to consider the factors listed in 8(a) when reviewing Mitchell's request for a *nunc pro tunc* designation was therefore, it argued, neither a violation of the Program Statement nor an abuse of discretion. BOP Memo at 4.

We do not agree. Although courts are generally required to defer to agency interpretations of their own regulations—even when those interpretations are set forth, as in this case, in legal briefs—deference extends only to interpretations that are not inconsistent with the text of the regulation. *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct. 2254, 2260–2261 (2011). In this case, we find the BOP's claim that consideration of the Section 8(a) factors is optional rather than mandatory to be clearly inconsistent with the language in Section 9(b)(4)(e), which states that, in cases where the administrator receives no information from the sentencing court, he or she "*will* make a determination based on the particular merits of the case." Farrar Decl. Ex. I at 6 (emphasis added). As we noted in the October Order the use of the verb "will" in statutes

and regulations is generally considered to indicate mandatory rather than permissive action. Mitchell, 2011 U.S. Dist. LEXIS 124351 at *21.

While it is true, as the BOP points out, that the first sentence of Section 8(a) uses the permissive verb "may" rather than the mandatory verb "will," there is no reason to conclude that this permissive language alters or affects 9(b)(4)(e). The first sentence of 8(a) applies to all cases in which administrators are moved, for whatever reason, to consider making an exception to the general rules that govern concurrent designation. Section 9(b)(4)(e) instead applies only to that narrow set of cases in which a prisoner requests a *nunc pro tunc* review, and the sentencing court fails to provide a recommendation to the BOP regarding this request. In this specific context, Section 9(b)(4)(e) makes clear that consideration of the factors listed in Section 8(a) is no longer optional but mandatory—presumably because in such cases, prison officials do not have other information, such as the opinion of the sentencing court, on which to rely. We therefore cannot agree with an interpretation of the Program Statement that is inconsistent with the mandatory language in Section 9(b)(4)(e). Despite the BOP's argument to the contrary, we conclude that in cases where inmates request a *nunc pro tunc* designation and the original sentencing court provides no opinion about the request, the BOP is obligated, under Program Statement 5160.05, to consider the factors listed in Section 8(a) when considering the request. Accordingly, we conclude that the BOP did not in fact comply with the procedures set forth in the Program Statement when it conducted its initial review of Mitchell's request for a *nunc pro tunc* designation.

This conclusion is not, however, dispositive of the matter, given the BOP's decision, in response to the October Order, to conduct a second review of Mitchell's case that did take into account all of the factors listed in Section 8(a) of the Program Statement. Specifically, the BOP

considered Mitchell's disciplinary history in prison and his post-incarceration institutional adjustment. It also solicited the recommendations of the wardens at the state and federal prisons in which Mitchell was incarcerated, as well as the opinion of the prosecuting Assistant United States Attorney. BOP Memo at 5–6. On the basis of this additional information, as well as the information collected in the original review, the BOP affirmed its earlier decision to deny Mitchell's *nunc pro tunc* request. It found that, given the violent nature of Mitchell's original crimes and a ten year post-sentencing history of aggressive, disruptive and violent behavior on Mitchell's part, a *nunc pro tunc* designation was not in the interest of the criminal justice system, or the protection of society. Farrar Second Decl. Ex. B.

We see no reason to disturb this conclusion. Although the BOP did not fulfill the requirements of the Program Statement when it conducted the first review of Mitchell's case, the second review did comply with the Program Statement's requirements. We therefore see no reason to conclude that, in this second review, the BOP abused the broad discretion granted it by 18 U.S.C. §3621(b) to designate places of federal imprisonment. Under *Barden*, we must, and do, uphold its judgment. *Barden*, 921 F.2d at 478.

## II. Conclusion

For the foregoing reasons, Mitchell's petition for a writ of habeas corpus is denied.

SO ORDERED.

Dated: April __, 2012
New York, NY

_____
U.S.D.J.